IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, the successor in interest to Fulcrum Insurance, ) ) ) ) | Case No. CV 06-0032-S-MHW |
| Plaintiff, ) ) ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. ) ) | |
| GREAT NORTHERN INSURANCE COMPANY, a Minnesota corporation, ) ) ) | |
| Defendant. ) ) | |

Currently pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 25), filed November 30, 2006 and Plaintiff's Motion for Summary Judgment (Docket No. 26), also filed November 30, 2006.  For the following reasons, each motion will be granted in part and denied in part.

**I.**
**Choice of Law**

Before addressing the cross-motions for summary judgment, there is a choice of law question that must be determined.  Plaintiff, in its Motion for Summary Judgment, contends that

Alabama law should apply.  Defendant maintains that Idaho law should apply, but also maintains

that the outcome is the same under either Alabama or Idaho law.

When a dispute arises about choice of law, the primary focus is on which state has the

"most significant contacts" with the particulars claims at issue, whether it be for breach of a

contract, an alleged tort committed by a party, or whether punitive damages should be a

component of the case.  This analysis involves the consideration of a number of factors and

policies.

In a diversity case like this one, the federal court must look to the forum state's choice of

law rules to determine the controlling substantive law.  *Patton v. Cox*, 276 F.3d 493, 495 (9th

Cir. 2002).  Accordingly, this Court will look to the state of Idaho's choice of law rules to

determine which substantive law shall apply.  The Idaho Supreme Court has adopted the

Restatement (Second) of Conflict of Laws ("Restatement")  "most significant contacts" test.  *See*

*Rungee v. Allied Van Lines, Inc.*, 92 Idaho 718 (1968); *DeMeyer v. Maxwell*, 103 Idaho 327 (Ct.

App. 1982); and *Grover v. Isom*, 137 Idaho 770 (2002).  The goal of this test is to identify the

state most significantly related to a particular issue and apply its law to resolve that issue.

*Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 651 (1995).  In doing so, the

court first identifies factual contacts between the transaction or parties and the interested states.

*Id.*  It then evaluates these contacts in light of certain broad policy concerns, including: the needs

of the interstate and international system; the relevant policies of the forum; the relevant policies

of other interested states and the relevant interests of those states in the determination of the

particular issue; the protection of justified expectations; the basic policies underlying the

particular field of law; certainty, predictability and uniformity of result; and ease in the

**Memorandum Decision and Order - Page 2**

determination and application of the law to be applied.  *Id.*

This case involves a dispute over whether certain claims are covered by an insurance policy.  Plaintiff General Security Indemnity Company of Arizona ("General Security" or "Plaintiff"), successor in interest to Fulcrum Insurance Company ("Fulcrum"), takes the view that this is a contract case and the choice of law issue must be resolved using choice of law factors that apply to contract issues.  Defendant Great Northern Insurance Company ("Great Northern"), although it does specifically state this, seems to believe that this is a tort case and that tort choice of law factors should be applied to determine the applicable law.  The Idaho Supreme Court addressed this issue in *Unigard Ins. Group v. Royal Globe Ins. Co.*.  100 Idaho 123 (1979).  In that case, a declaratory judgment action was brought to establish liability among three different policies based upon an underlying wrongful death action.  *Id.* at 125.  The Idaho Supreme Court rejected the appellant's argument that Oregon law should apply because that was where the tort was committed.  *Id.* at 126.  Instead the Idaho Supreme Court stated that the case involved the "interpretation of written contracts of insurance"and then applied the Restatement's choice of law factors that pertain to contract cases.  *Id.*  This present case is similar to *Unigard* and although the underlying causes of action were based in tort, this case involves the interpretation of two insurance contracts.

In § 188 of the Restatement (Second) of Conflict of Laws, the factors to examine in connection with a contract claim include:  a) the place of contracting, b) the place of negotiation of the contract, c) the place of performance, d) the location of the subject matter of the contract, and e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See Seubart Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 651 (1995).

**Memorandum Decision and Order - Page 3**

There are two contracts at issue here, the Great Northern policy and the Fulcrum policy. Although the Great Northern policy seems more significant in resolving the issues presented in the summary judgment motions, the Fulcrum policy is also at issue and discussed in both parties' motions for summary judgment, but to a lesser extent.

The Great Northern policy was contracted and negotiated in Alabama, the place of performance also appears to be Alabama as that is where the named insured, Syncro Corporation ("Syncro"), has its principal place of business, although it is a Michigan corporation.  The subject matter of the contract, the brake controller, was located in Alabama when manufactured and later sold to a business in Idaho.  Defendant Great Northern is a Minnesota corporation, its principal place of business is not stated, but it is authorized to do business in Idaho.

The Fulcrum policy appears to have been contracted and negotiated in Idaho, the place of performance also appears to be Idaho, as that is where the named insured, Maple Grove RV Services, Inc. ("Maple Grove RV"), is incorporated and has its principal place of business.  The location of the subject matter of the contract also seems to be Idaho.  Plaintiff General Security is an Arizona corporation, its principal place of business is also not stated, but it is authorized to do business in Idaho.

Idaho has the most significant relationship to both parties and the contracts in question. Although only the Fulcrum policy was contracted in Idaho, the Great Northern policy also potentially extends to vendors in Idaho through its Vendors clause.[1]  Also, the subject matter of the Great Northern policy, Syncro's products including the brake controller, are not exclusively located in Alabama but found in Idaho and other states once put into the stream of commerce.

---

[1]  Whether the Great Northern policy does in fact extend to Maple Grove RV is at issue in this case, but there is the potential that a vendor be covered, depending on the type of claim brought against it.

**Memorandum Decision and Order - Page 4**

Both insurance companies are authorized to do business in the state of Idaho so neither should be surprised by the application of Idaho law, especially when the subject matters of their contracts are, or end up, in Idaho.

## II.
## Background

On or about March 18, 1999, Fulcrum issued a Commercial Garage Liability insurance policy, Policy Number GP 1002707 ("the Fulcrum policy") to its insured, Maple Grove RV, for the period of March 18, 1999 to March 18, 2000, with garage liability coverage of $500,000 for each "accident" for other than "auto" only. (Plaintiff's Statement of Facts, "Plaintiff's Facts," ¶ 1.)

On or about July 1, 1998, Defendant Great Northern issued a Quality Commercial Coverage insurance policy, Policy Number 3525-47-85CCG ("Great Northern policy") to its insured, Syncro, for the period of July 1, 1998 to July 1, 1999.  This policy not only provided $2,000,000 of general liability insurance, which would cover claims made against Syncro for bodily injuries third parties may receive from defective products manufactured by Syncro, it also included some insurance coverage for vendors who sold Syncro products under the products/completed operations section with limits of $1,000,000 per occurrence.  (Plaintiff's Facts ¶ 2.)

In December 1998, Syncro manufactured a Model No. 81741A electronic brake controller and sold and distributed it to Hayes Lemmerz International, Inc.  Hayes Lemmerz International then sold the brake controller to an independent distributor and in June 1999, Maple Grove RV purchased the brake controller from Henderson Wheel and Supply, a Boise, Idaho parts distributor.  (Defendant's Statement of Undisputed Material Facts in Support of

Motion for Summary Judgment, "Defendant's Facts" ¶ 3-4.)  Maple Grove RV is a recreational vehicle (RV) retail parts and service company.  As part of its business, it installs brake controllers in tow vehicles for use with recreational trailers.  On June 9, 1999, Maple Grove RV sold, installed, and adjusted a brake controller in a 1999 GMC Denali owned by Juan Vuittonet ("Mr. Vuittonet") for purposes of towing Mr. Vuittonet's 1997 Kit Companion Trailer. (Plaintiff's Facts ¶ 5, Defendant's Facts ¶ 5.)  The brake controller was installed and adjusted by Maple Grove RV employees Jason Thomas and Matt Dugan ("Dugan").  After installing and adjusting the brake controller, Dugan stated he road-tested the Denali and trailer at speeds up to 20 miles per hour (mph) in a parking lot and pushed on the Denali brake pedal in a normal matter.  He adjusted the brake controller consistent with his customary practice so that when the brake pedal was pushed, there was firm, smooth and proportional braking between the Denali and the trailer.  (Plaintiff's Facts ¶ 6-7.)  Mr. Vuittonet picked up the Denali and trailer and drove it to his home, traveling at speeds of 20 to 45 mph.  He did not have any problems with grabbing, locking, screeching, jerking or anything out of the ordinary with the brakes, nor did he have a problem stopping when he pressed the brake pedal.  (Plaintiff's Facts ¶ 9.)  After arriving home, Mr. Vuittonet disconnected the trailer from his vehicle.

On June 12, 1999, prior to leaving for a family outing, Mr. Vuittonet reconnected the trailer to his vehicle.  After getting his family into the vehicle, Mr. Vuittonet left his residence and proceeded to drive towards Interstate Highway 84.  After getting on Interstate 84, and traveling about 1 ½ miles, Mr. Vuittonet lost control of the Denali and trailer, which killed his wife Deborah Vuittonet.  The Vuittonets' two children were injured, along with Mr. Vuittonet. (Plaintiff's Facts ¶ 11.)

**Memorandum Decision and Order - Page 6**

On June 11, 2001, Mr. Vuittonet and his children filed a Complaint and Demand for Jury Trial in the Fourth Judicial District of the State of Idaho (hereinafter "the Vuittonet case") seeking damages for the death of Mrs. Vuittonet and for the personal injuries to Mr. Vuittonet and his two daughters.  The lawsuit was brought against Hayes Lemmerz International, Inc., Hayes Wheels International, and Kelsey-Hayes Company as the designers, manufacturers and/or distributors of the brake controller.  The Vuittonets also sought wrongful death and personal injury damages from Maple Grove RV for breach of contract, negligence in failing to properly install, adjust and test the brake controller, failure to warn/instruct of the dangers arising from the use of the brake controller and breach of express and implied warranties.  In November 2001, Fulcrum, Maple Grove RV's insurer, accepted Maple Grove RV's tender of defense and agreed to provide it with a defense in the Vuittonet case.  (Defendant's Facts ¶ 7-8.)

On July 22, 2003, the Vuittonets filed an Amended Complaint and Demand for Jury Trial in which they joined Syncro as the designers, manufacturers, and/or distributors of the brake controller under the following theories: product liability (strict liability and negligence); failure to warn/instruct; breach of implied warranty; and violations of the Idaho Consumer Protection Act.  These claims against Syncro were brought only on behalf of Sarah S. Vuittonet, one of the injured daughters.  (Plaintiff's Facts ¶ 14.)  In August 2003 and September 2004, Maple Grove RV tendered the defense and indemnity of the Vuittonet case to Syncro and its insurer, Great Northern.  Maple Grove RV asserted that it was an insured vendor of the brake controller under Great Northern's policy and was entitled to a defense pursuant to Idaho Code § 6-1407.  Syncro and Great Northern rejected the tender on the basis that Maple Grove RV's conduct in connection with its installation of the brake controller was a substantial proximate cause of the

accident, among other reasons. Great Northern also took the position it had no duty to defend

Maple Grove RV.  It maintained any coverage afforded to Maple Grove RV under the Great

Northern policy was "excess insurance," because Maple Grove RV's "Installation Risk" was

covered under the Fulcrum policy and because the claim arose out of the maintenance or use of

an auto.  (Defendant's Facts ¶ 12-13.)

      The Vuittonets' liability experts, Richard Cook, P.E., Ronald R.L. Renz and Richard Gill,

Ph.D., opined that the accident was caused by a malfunctioning brake controller, most likely a

"sticking pendulum" located inside the sealed brake controller.  (Plaintiff's Facts ¶ 17.)

Syncro's Vice President and Manager of its Engineering Department, Bruce Biggard, reviewed,

analyzed and/or participated in several "bench tests" performed by the Vuittonets' engineering

experts.  For reasons set forth in Mr. Biggard's affidavit, none of the testing done by him or the

Vuittonets' engineering experts supported the allegation that the accident was caused by the

pendulum in the brake controller having stuck.  Additionally, Maple Grove RV's expert accident

reconstructionist, Thomas Blotter, Ph.D., opined that the brake controller was not the cause of

the accident but rather the accident was the result of the failure of the Vuittonets to properly

connect the trailer to the Denali.  (Defendant's Facts ¶ 13-17.)

      Syncro filed a motion for summary judgment on the claims against it.  The state court

granted partial summary judgment in favor of Syncro with respect to the claims for breach of

implied warranty and breach of the Idaho Consumer Protection Act.  (Plaintiff's Facts ¶ 18.)  On

January 6, 2005, the underlying action settled through mediation with Fulcrum contributing

$420,000 on behalf of Maple Grove RV to settle the causes of action against it.  Great Northern

contributed $100,000 toward the settlement on behalf of its insured, Syncro.  (Defendant's Facts

¶ 18.)  On July 6, 2005, Maple Grove RV and Fulcrum made a written demand upon Great Northern to indemnify Maple Grove RV and/or Fulcrum in the amount of $620,608, which included the $420,000 for the settlement paid to the Vuittonets and $200,608 in costs and attorneys' fees incurred in defending Maple Grove RV.  Great Northern declined to indemnify Maple Grove RV and/or Fulcrum on the basis that any coverage existing for Maple Grove RV under Great Northern's policy was "excess" to that provided by Fulcrum and also that Maple Grove RV was not entitled to "vendors coverage" under Great Northern's policy.  (Defendant's Facts ¶ 19-20.)

Plaintiff General Security, the successor in interest to Fulcrum, has brought this contribution action against Defendant Great Northern for costs incurred in defending Maple Grove RV in the underlying action and any costs associated with the settlement incurred on behalf of Maple Grove RV.  Cross motions for summary judgment were filed by both parties on November 30, 2006.

### III.
### Standard of Review

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56.  Rule 56, which provides in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (1993). A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.,* at 250. "When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id.,* at 254. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 500 (9th Cir. 1992). The Ninth

Circuit has found that in order to resist a motion for summary judgment,

> the non-moving party:  (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371, 374 (9th Cir. 1989).

There are no genuine issues of material fact that exist in this case. Rather, this case hinges solely upon interpretation of the insurance policies, which can be determined as a matter of law.  As there are no factual disputes, this case is appropriately resolved at the summary judgment stage.

## IV.
## Duty to Defend

The first major issue in this case is whether Great Northern had a duty to defend Maple Grove RV in the underlying litigation.  The duty of an insurer to defend, for the protection of the insured, is a separate, unrelated and broader obligation than the duty to pay damages under the insurance policy.  *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 798 (Ct. App. 1984). An insurer's duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insurer's policy. *Constr. Mgmt Systems, Inc. v. Assurance Co. of America*, 135 Idaho 680, 682 (2001).  The duty to defend exists so long as there is a genuine dispute over facts bearing on coverage under the policy or over the application of the policy's language to the facts.  *Id*. at 682-83.  When there is a question as to whether a theory of recovery within the policy coverage has been pled in the

underlying complaint, the insurer must defend regardless of possible defenses against the insured under the policy or under the substantive law governing the claim. *Id.* at 683.

The proper procedure for an insurer who does not believe the claim against the insured is covered by its policy is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy and if so, then the insurer must immediately step in and defend the suit. *Kootenai County v. Western Cas. & Sur. Co.*, 113 Idaho 908, 911 (1988). However, if the insurer believes that the policy itself provides an exclusion for noncoverage, it *may* seek declaratory relief. *Id.* Once it is determined that the insurer has a duty to defend, the duty to defend and pay defense costs continues until a subsequent event establishes that the claim against the insured does not fall within the policy's scope of coverage. *Aetna Cas. & Sur. Co. v. Mut. of Enumclaw Ins. Co.*, 121 Idaho 603, 607 (1992).

Plaintiff argues that Great Northern had a duty to defend once allegations in the complaint revealed a potential for liability that would be covered by the policy. Plaintiff contends that as Maple Grove RV was an insured vendor according to the term of Great Northern's policy, at the very least, Great Northern had a duty to defend once the Vuittonets filed their complaint in the underlying litigation. Defendant maintains it did not have a duty to defend because Maple Grove RV was not entitled to coverage as a vendor under the terms of its policy and also because its coverage was "excess" to the coverage provided by the Fulcrum policy.

Whether Maple Grove RV was actually entitled to coverage under the Great Northern policy is not the issue when it comes to the duty to defend. The appropriate inquiry is, when looking at the complaint broadly, whether there was a *potential* for liability. The Amended Complaint in the Vuittonet case made the following general claim against all of the defendants:

> The Trailer's Electronic Brake Controller locked, causing the Trailer to swerve. As a result, the [Denali] flipped and rolled. The losses and damages suffered by the Plaintiffs are the direct and proximate result of the negligent design and warning, defective design, failure to warn, failure to instruct, misrepresentation, breaches of implied warranties, breaches of contract, failure to test, and the willful and wanton conduct of the Defendants, Hayes Lemmerz International Inc., Kelsey-Hayes Company, Hayes Wheels International, *Syncro Corporation* and *Maple Grove RV Service.*

Amended Complaint ¶ 22 (Emphasis added).

As to Syncro, the Amended Complaint specifically alleged: 1) strict liability based on a defective product that was unreasonably dangerous to users; 2) negligence in the manufacture and design of the brake controller; 3) breach of the implied warranty that the controller was fit and safe for its intended use; 4) a violation of the Idaho Consumer Protection Act; and 5) failure to warn/instruct of the dangers and defects. As to Maple Grove RV, the Amended Complaint specifically alleged:  1) negligence in failing to properly install and adjust the brake controller; 2) failure to warn/instruct of the dangers associated with the use of the controller and how to properly use it; and 3) failure to adequately test the controller after installation. In making their allegations against Maple Grove RV, the Plaintiffs incorporated by reference all of the general allegations of the preceding paragraphs, including the allegations in paragraph 22 quoted above.

When interpreting these allegations in the Amended Complaint broadly and considering that these allegations specifically address the brake controller, that Maple Grove RV was a vendor of the brake controller and the Great Northern policy does provides coverage for vendors under certain circumstances; the Court finds that there was a potential for liability that would be covered by the Great Northern policy. Whether the claims are ultimately covered by the policy does not matter when considering an insurer's duty to defend. The allegations in the Vuittonets'

Amended Complaint were such that there was a possibility they were covered under Great Northern's Vendors clause as they involved allegations of "bodily injury...arising out of...[Syncro's] product..."[2]  Also, Maple Grove RV was included in the general allegations of strict product liability asserted against Syncro and, at the least, this part of the allegations resulted in Maple Grove RV being before the state court solely in its role as the end seller of the product manufactured by Syncro.

Great Northern almost concedes this point in its Motion for Summary Judgment.  In its Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, paragraph 10 summarizes the claims against Maple Grove RV contained in the Amended Complaint and subparagraph (i) states, as one of the many claims, the following:  "Sale to Mr. Vuittonet of defective and unreasonably dangerous electronic brake controller."   In the Memorandum of Law in Support of the Motion for Summary Judgment submitted by Great Northern is the following statement on page 5, "The sole allegation against Maple Grove RV that arose out of the purported conduct of Syncro was its sale of an allegedly defective and unreasonably dangerous brake controller."

Supposing this was the sole allegation, it still triggered the duty to defend, even if Maple Grove RV arguably did not fall under the policy as an insured vendor.   This duty to defend continued until it was determined that claim did not fall within the policy.  As this case settled and it was never determined prior to settlement that the claims did not fall within the policy, Great Northern's duty to defend continued until the case settled.

Sanctions for breach of a duty to defend are to be governed by the ordinary principles of

_____

[2] This is the language contained in Great Northern's Vendors clause.

**Memorandum Decision and Order - Page 14**

contract law, meaning the non-breaching party is to be fully recompensated for losses sustained because of the breach. *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 799 (Ct. App. 1984). In *Hirst*, the court held that attorney fees and costs incurred by the insured, as a result of the refusal of the insurer to assume the defense, were properly recoverable as damages for breach of contract. *Id.* When two or more insurers have a duty to defend, they must all share the costs of the defense equally, regardless of the actual limits in their respective policies. *See Viani v. Aetna Ins. Co.*, 95 Idaho 22, 37 (1972); *Aetna Cas. & Sur. Co. v. Mut. of Enumclaw Co.*, 121 Idaho 603, 605 (1992). Since Fulcrum, now General Security, provided the defense for Maple Grove RV in the Vuittonet case, it is entitled to payment from Great Northern for half the costs and attorneys' fees associated with that defense.

## V.
## Duty to Indemnify

An insurer's duty to indemnify is separate from, and more narrow than, its duty to defend. *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 375 (2002). The duty to indemnify arises when the claim is actually covered by the insurance policy. *See Esterovich v. City of Kellogg*, 139 Idaho 439, 441 (2003). To ascertain whether Great Northern has a duty to indemnify, the Court must determine if the Vuittonets' claims were actually covered by the Great Northern insurance policy. Two clauses come into play when making this determination: Great Northern's Vendors clause; and the Other Insurance clauses of both the Fulcrum policy and the Great Northern policy. These clauses do not exist in a vacuum, it is necessary to look at the policies in a real world, commercial sense. Looking at the broader picture, what risks did Syncro and Maple Grove RV hope to insure against when they purchased these policies for their businesses?

**Memorandum Decision and Order - Page 15**

**A.  Vendors Clause**

    **1.**     **Policy Language**

In defining "Vendors" under "Who Is Insured" in the Great Northern policy, it states:

> Any vendor is an insured, but only with respect to bodily injury or property damage arising out of the distribution or sale of your products in the regular course of that vendor's business and only if products/completed operations coverage is provided under this contract.

> No vendor is an insured with respect to:

> •     demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of your products;....
> •     any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of your products;...

    **2.**     **Discussion**

Defendant Great Northern argues that it had no obligation to provide coverage to Maple Grove RV because the loss was not within the scope of its Vendors clause.  Defendant contends the majority rule is that a vendor is only provided coverage to the extent it is held strictly liable without fault of its own.  *See Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 280 F.3d 744 (7th Cir. 2002).  As the underlying action alleged, among other things, that the loss resulted from Maple Grove RV's failure to properly install, adjust and test the brake controller, Great Northern urges there is no basis to find that Maple Grove RV was a passive vendor exposed to liability through no fault of its own and accordingly, Great Northern is entitled to summary judgment.

Plaintiff argues that Maple Grove RV was a covered vendor, according to the very terms of the Great Northern policy, because it was a vendor of a Syncro product and the Vuittonets'

injury claims arose out of the distribution or sale of the product in the regular course of business. Plaintiff cites to several cases in which courts have found coverage even where the vendor was negligent in causing the injury as they determined, in the terms of the policies, that the injuries "arose out of" the distribution or sale of the product in question.  *See Sportmart v. Daisy Mfg. Co.*, 645 N.E.2d 360 (Ill. App. Ct. 1994); *Pep Boys v. Cigna Indemnity Ins. Co. of N. America*, 692 A.2d 546 (N.J. Super. Ct. App. Div. 1997).  Plaintiff maintains that since the Great Northern policy does not expressly limit vendor coverage to strict liability claims, there is coverage for the claims against Maple Grove RV.  Plaintiff lastly argues that there is an ambiguity between the two exclusions in the Vendors clause quoted above, specifically that "installation" could be interpreted to include "adjustment and testing," and such ambiguities must be interpreted narrowly.  Construing the provisions in this manner, Plaintiff maintains any installation, adjustment and testing that was performed on Maple Grove RV's premises would be excepted from this coverage exclusion and the claims would in fact be covered under this provision.

There are two lines of cases that address "vendor's endorsements" that appear in manufacturers' insurance policies.  One line of cases, that Plaintiff relies on, interprets the phrase "arising out of"[3] broadly to mean "growing out of,"  "originating from" or "flowing from."  In these cases, unless the act, typically negligence on part of the vendor, which caused the injury was specifically excluded from coverage, the courts held the injuries or losses were covered by the vendor's endorsement.  Many of these courts stated that if the insurance company did not intend to cover something, it should have specifically excluded in its policy, noting that

---

[3]  Many vendor's endorsements, as the one in the Great Northern policy, state they cover vendors only with respect to "bodily injury or property damage *arising out of* the distribution or sale of [manufacturer's] products in the regular course of that vendor's business..." (emphasis added.)

ambiguity is resolved in favor of the insured.

The other line of cases holds that vendor's endorsements only apply when the vendor is being sued in strict liability.  The main case that the Defendant relies on for this argument is *Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, in which the Seventh Circuit stated the purpose of a vendor's endorsement is to protect against the expense of being dragged as an additional defendant into a lawsuit "arising from a defect in a product that it distributes...[t]his assumes that the vendor's role in the distribution of the product is passive...[t]he manufacturer would be unlikely to insure against defects introduced by the vendor himself."  280 F.3d 744, 746-47 (7th Cir. 2002).  Judge Posner in that case applied the "majority view," which is that the vendor's endorsement is inapplicable if the vendor may be responsible for the alleged defect out of which the lawsuit arises.  *Id*. at 747.  In describing the majority view, Judge Posner stated that it is not based on the language of the vendor's endorsement, but instead on the "improbability of supposing that the manufacturer's insurer intends to protect others against the risks that the others create...[a] further consideration is that vendor's endorsement policies are cheap add-ons to products liability policies..."  *Id*.  *See also Mitchell v. Stop & Shop Cos., Inc.*, 672 N.E.2d 544 (Mass. App. Ct. 1996) (the court did not consider the language of the vendor's endorsement and exclusions and instead stated that the purpose of the vendor's broad form coverage was to extend the manufacturer's own products liability coverage to the vendors whose own liability arises simply from their role in passing the product on to the customer); *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 833 N.E.2d 232, 234 (N.Y. 2005) (the court concluded that bodily injuries "arising out of [manufacturer's] products" means injuries arising out of defects in the product rather than arising out of vendor's negligence); *SDR Co., Inc. v. Federal Ins. Co.*,

242 Cal. Rptr. 534 (Cal. App. 1987); *Senco of Florida, Inc. v. Continental Cas. Co.*, 440 So.2d 625 (Fla. App. 1983).

Some courts that have followed this same view have looked at the language of the vendor's endorsement in making their decision. *See McGill v. Cochran-Sysco Foods*, 818 So.2d 301, 308 (La. Ct. App. 2002). In *McGill*, the court stated "the language of the endorsement, which extends to damage 'arising out of' [manufacturer's] products, and the exclusions[4] to coverage support the interpretation of the endorsement as providing coverage when damage is due to some defect in the product and not to negligence on part of the vendor." *Id.*

The Court agrees with the reasoning in *Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, that a "...vendor's endorsement is inapplicable if the vendor, whether by participating in the creation of the product or by altering or repairing it, may be responsible for the alleged defect out of which" the lawsuit arises. 280 F.3d 744, 747 (7th Cir. 2002). In looking at the reasonable expectations of insurance companies when they enter into insurance policies such as the Great Northern policy, the Court finds that an insurance company insuring a manufacturer like Syncro would not intend to insure a vendor for injuries caused by the vendor's own negligence. Rather its intention would be to insure a vendor for strict product liability claims, where there is no fault on part of the passive vendor. The Court does not believe it would be a reasonable expectation for an insurer, such as Great Northern, to insure claims based on negligent installation, adjustment and testing performed by the vendor. Interpreting the Vendors clause to include coverage for negligence on part of the vendor would extend coverage too broadly and essentially cover anything that happened down the road. The claims against Maple Grove RV are not

---

[4] The exclusions that this policy excepted from coverage are essentially the same as the exclusions in the Great Northern policy.

covered under the policy because they are not strict liability claims, and accordingly Defendant

Great Northern has no duty to indemnify Plaintiff.

This line of reasoning is further supported by the reasonable commercial expectations of

Maple Grove RV when it made a decision to purchase garage operations insurance to protect

itself against a claim similar to this, that it had failed to exercise ordinary care when installing

the brake controller, and/or failed to test, adjust or warn its customers on the operations of the

brake controller.  Syncro would also have had a reasonable commercial expectation that

installers of its product, such as Maple Grove RV, would have insurance to cover their own

negligent conduct.  It would not be commercially reasonable from an insurance standpoint, for

Syncro to believe that it had to purchase and pay a premium on far broader insurance to cover

potential negligence on the part of some installer further down the distribution chain.

In adopting this line of reasoning, there is no need to address Plaintiff's other argument

regarding ambiguities between the two exclusions.  Although the Court does not agree that there

is an ambiguity, the argument is foreclosed by the Court's finding that the Vendors clause would

only provide coverage for strict products liability claims.

**B.    Excess Insurance Clauses**

Great Northern argues that its policy is "excess" over any other insurance covering

Installation Risk or "if the loss arises out of the maintenance or use of ...autos," including a

trailer.  If, by its terms, the policy only provides "excess" coverage, Great Northern would have

had no duty to indemnify because the Fulcrum policy provided primary coverage and it was

never exhausted.  It is not really necessary to reach this issue since the Court has already found

that the Great Northern policy did not provide coverage for Maple Grove RV and as there is no

coverage, it cannot be "primary" or "excess."  However, since the parties have expended a great

deal of effort arguing this particular point, the Court will address it briefly.

### 1. The Policies

The Fulcrum policy's Other Insurance clause provides:

> a.    For any covered "auto" you own, this Coverage Form provides
> primary insurance.  For any covered "auto" you don't own, the
> insurance provided by this Coverage Form is excess over any other
> collectible insurance...

> d.    When this Coverage Form and any other Coverage Form or policy
> covers on the same basis, either excess or primary, we will pay
> only our share.  Our share is the proportion that the Limit of
> Insurance of our Coverage Form bears to the total of the limits of
> all the Coverage Forms and policies covering the same basis.

"Autos" which are covered by the Fulcrum policy include "autos" not owned, leased, rented or

borrowed and used in connection with the garage business.  Also covered are recreational

vehicles held for repair or service.  Plaintiffs have admitted this case does not involve "covered

'autos'" under the Fulcrum policy and as the "Other Insurance" clause only applies to "covered

'autos,'" it is inapplicable.

The Great Northern policy's Other Insurance clause reads:

> If other valid and collectible insurance is available to the insured for a loss
> we cover under bodily injury, property damage, advertising injury or
> personal injury coverage of this insurance, our obligations are limited as
> follows:

> *Primary Insurance*

> This insurance is primary except when the Excess Insurance provision
> described below applies.

> If this insurance is primary, our obligations are not affected unless any of
> the other insurance is also primary. Then we will share with all that other
> insurance by the method described in the Method of Sharing provision

described below.

*Excess Insurance*

This insurance is excess over any other insurance, whether primary, excess or contingent or on any other basis;

> A.     that is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for your work;
> B.     that is Fire insurance for premises rented to you;
> C.     if the loss arises out of the maintenance or use of aircraft, autos, or watercraft not subject to the Aircraft, Auto or Watercraft exclusion; or
> D.     that is valid and collectible bodily injury, property damage, advertising injury, or personal injury insurance:
>
>> 1.     provided you by anyone working under contract for you; or
>> 2.     provided by another party's policy to which you have been added as an additional insured

When this insurance is excess, we will have no duty under bodily injury, property damage, advertising injury or personal injury coverages to defend any insured against a suit that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's right against all those other insurers.

The Air, Auto, or Watercraft Exclusion referred to in the Other Insurance clause states:

> This insurance does not apply to bodily injury or property damage arising out of ownership, maintenance, use, operation, loading or unloading, or entrustment to others of any:
>
>> aircraft,
>> auto; or
>> watercraft
>
> which any insured owns, operates, rents or borrows.

## 2.     Discussion

Defendant contends that its Excess Insurance provision applies in this case because the underlying litigation involved a loss "arising out of maintenance or use of" an auto.  As the

**Memorandum Decision and Order - Page 22**

policy provides it is only primary insurance when the Excess Insurance clause does not apply, Defendant maintains it would have no duty to indemnify because the insurance was "excess." Additionally, Defendant argues that since the Fulcrum policy was not exhausted, Great Northern's duty to indemnify would never come into play.[5]

Insurance policies are to be construed in their ordinary meaning, and where the language employed is clear and unambiguous, there is no need to construe a policy other than the meaning determined from the plain wording in the policy. *Miller v. World Ins. Co.*, 76 Idaho 355, 357 (1955). It is the function of a court to construe the insurance contract as written and the court cannot create liability not assumed by the insurer, nor make a new contract for the parties or one different from what was plainly intended. *Id.*

Whether an insurance policy is ambiguous is a question of law for the court. *Purvis v. Progressive Casualty Ins. Co.*, 142 Idaho 213, 216 (2005). In determining ambiguity, the provision in question must be read within the context in which it occurs in the policy. *Id.* A provision will not be ambiguous merely because it is poorly worded or a reader has to stop and think about what it means. *Id.* If the insurance policy is unambiguous, the court is to construe it as written. *Id.* When the policy is ambiguous, meaning it is subject to conflicting interpretations, the ambiguities will be resolved against the insurer. *Id.*

When there are two insurance policies that contain "other insurance" clauses, a court must compare the clauses of the applicable policies to determine if the clauses conflict. *Erland v. Nationwide Ins. Co.*, 136 Idaho 131, 134 (2001). If the clauses conflict, they are void. *Id.* If

---

[5] Plaintiff makes a convoluted argument that involves a tortured reading of the Great Northern policy, specifically the Aircraft, Auto, or Watercraft Exclusion and its paragraph C. The Court cannot make sense of this argument and although the Court ultimately agrees with Plaintiff that the policy is not excess, it does not agree with this part of Plaintiff's rationale.

**Memorandum Decision and Order - Page 23**

they do not conflict, they are enforced.  *Id*.

The other insurance provisions of the two policies do not conflict because, as both parties agree, the Fulcrum policy's provision does not apply in this case.  As the Other Insurance clause in the Fulcrum policy is inapplicable, the policy is silent as to whether it is primary or not.  The Court finds that because the policy is silent and does not state whether to consider it excess in this instance, it is primary insurance.

The question then is the interpretation of the Great Northern policy's Excess Insurance provision.  The Court does not find the provision to be ambiguous and will construe it as written.  The Court disagrees with Defendant's interpretation of this clause.  This loss did not arise out of the maintenance or use of an automobile, except in the most broadest sense.  The Amended Complaint alleges that the loss occurred because either the brake controller was defectively manufactured or improperly installed and/or adjusted, or that their was a failure to warn of the dangers of the device or how to properly use it.  The fact it was installed in an automobile to actuate the brakes of a trailer being towed behind the vehicle does not equate to having the loss occur out of the maintenance or use of an auto.  It is simply not the same thing.

While it is not necessary to reach the issue of whether Great Northern policy provided only "excess" coverage, because the Court has already found there was no coverage for Maple Grove RV in this case, nonetheless, the Court finds that it did not.

## <u>ORDER</u>

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY ORDERED that:**

1)      Defendant's Motion for Summary Judgment (Docket No. 25), filed November 30,

2006, be GRANTED IN PART AND DENIED IN PART.

2)      Plaintiff's Motion for Summary Judgment (Docket No. 26), filed November 30,

2006, be GRANTED IN PART AND DENIED IN PART.

3)      Plaintiff is to prepare a proposed judgment, submit it to Defendant for review as

to form and content, and then submit it to the Court.

DATED: March 19, 2007

Honorable Mikel H. Williams
United States Magistrate Judge